U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

AUG 13 2013

TONY R. MOORE, CLERK
BY _____
            DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JEANNINE ANTOINETTE THIBODEAUX BERTRAND, ET AL. | CIVIL ACTION NO. 12-0853 |
| VERSUS | JUDGE DOHERTY |
| ELI LILLY & CO., ET AL. | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court is a Report and Recommendation issued by the magistrate judge, in which the magistrate judge recommends the "Motion to Dismiss Pursuant to Federal Rule of Civil procedure 12(b)(6)" [Doc. 31] filed by defendant Eli Lilly & Co ("Eli Lilly") be granted in part and denied in part. Eli Lilly filed an Objection to the Report and Recommendation [Doc. 29]; plaintiffs Jeannine Antoinette Thibodeaux Bertrand and Alex Bertrand ("plaintiffs") filed a Response to the Objection [Doc. 50]; and Eli Lilly filed a "Motion for Leave to File Reply in Further Support of Objection" [Doc. 51], which is hereby GRANTED. After this Court's *de novo* review of Eli Lilly's objections, this Court largely ADOPTS the findings of the magistrate judge, with some minor clarifications. Consequently, the Motion to Dismiss Pursuant to Federal Rule of Civil procedure 12(b)(6)" [Doc. 31] is GRANTED IN PART AND DENIED IN PART, for the reasons more fully discussed below.

I.      **Standard of Review**

    A.      **Standard of Review on Magistrate Judge's Report and Recommendation**

Pursuant to 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a *de novo* determination of those portions of the [magistrate judge's] report [and recommendation] or specified proposed findings or recommendations to which objection is made." Section 636(b)(1) further states "[a]

judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 23 U.S.C. §636(b)(1).

### B.  Standard of Review on Motion to Dismiss

When reviewing a motion to dismiss, this Court's "analysis generally should focus exclusively on what appears in the complaint and its proper attachments." *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) *cert. denied*, 133 S.Ct. 32, 183 L.Ed. 2d 678 (U.S. 2012), *citing Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006). The Court reviews the motion to dismiss under Rule 12(b)(6), "*accepting all* well-pleaded *facts as true and viewing those facts in the light most favorable to the plaintiff.*" *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted) (emphasis added). However, "[f]actual allegations must be enough to raise a right to relief *above the speculative level.*" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (emphasis added). "To survive a motion to dismiss, a complaint must contain *sufficient* factual matter, *accepted as true*, to 'state a claim to relief that is *plausible on its face*.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), *quoting Twombly*, 550 U.S. at 570 (emphasis added).

Thus, pursuant to a 12(b)(6) inquiry, the Court is addressing the *sufficiency* of the facts plead, not their truth or the ultimate substantive application of those facts, and therefore, looks to whether the facts are *"well pleaded"* rather than to resolve the disputes or possible arguments suggested by, or, surrounding those facts. The jurisprudence instructs the nature of such an inquiry should look to whether a claim has facial plausibility where the pled facts allow a court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "The

plausibility standard is not akin to a 'probability requirement,' but it asks for *more than a sheer possibility* that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937, *quoting Twombly*, 550 U.S. at 556(emphasis added). Stated differently, the jurisprudence instructs that if a plaintiff fails to allege, in his/her pleadings, facts sufficient to *"nudge [his or her] claims across the line from conceivable to plausible*, [his or her] complaint must be dismissed." *Mitchell v. Johnson*, 07-40996, 2008 WL 3244283 (5th Cir. Aug. 8, 2008), *citing Twombly*, 550 U.S. at 570(emphasis added). Again, the jurisprudence instructs that determining whether this standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In his Report, Magistrate Judge Hill cites the analysis of Magistrate Judge Hanna, contained within his Report and Recommendation in *Barber v. Bistol-Myers Squibb*, Docket No. 09-1562, at pp. 5-9 (W.D. La. March 31, 2010) [Doc. 54], which was ultimately adopted by the district court on May 7, 2011. In *Barber*, Magistrate Judge Hanna states:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct. at 1949, *Twombly*, 555 U.S. at 556, 127 S.Ct. at 1965. *This analysis is not substantively different from that set forth in Lormand, supra, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim.* The standard, under the specific language of Fed. Rule Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257,

3

*Twombly*, 555 U.S. at 556, 127 S.Ct. at 1965.[1]

(emphasis added).

Subsequent to *Barber*, the Fifth Circuit described the *Iqbal/Twombly* analysis as follows:

> To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To be plausible, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. *MySpace*, 528 F.3d at 4182 (*citing Hughes*, 278 F.3d at 420). We do not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir.2007) (*quoting Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir.2005)); *see also Iqbal*, 129 S.Ct. at 1940 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

*In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010).

More recently, the Fifth Circuit reiterated *Iqbal* and *Twombly's* plausibility standard in *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (*quoting Twombly*, 550 U.S. at 570). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.

## II. Factual Background

The factual background was set forth in the magistrate judge's Report, as follows:

---

[1] *See Barber*, at pp. 5-9, *cited in Diamond Services Corp. V. Oceanografia SA De CV*, 2011 WL 938785 at *2 (Feb. 9, 2011) (Hill, M.J.). Magistrate Judge Hill's Report and Recommendation citing *Barber* was adopted by this Court on March 15, 2011. This Court concludes the line of cases cited by the magistrate judges in the foregoing cases is illustrative and enlightening.

This is a products liability suit which alleges that Jeannine Bertrand's use of the antidepressant drug, Prozac, during her pregnancy caused birth defects in her third child, Aimeé Katherine Bertrand. On April 10, 2012, the action was filed in this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §1332, and supplemental jurisdiction over the Louisiana state law claims pursuant to 28 U.S.C. §1367.

In the original complaint, Bertrand asserted negligence and products liability claims against Eli Lilly and its insurer. [rec. doc. 1, ¶ 9]. On June 7, 2012, Eli Lilly filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) seeking dismissal of plaintiffs' claims of strict products liability, common law negligence, inadequate or negligent testing, negligent promotion, marketing selling, and continued production and sale, as being outside of the scope of the Louisiana Products Liability Act ("LPLA"), LA. REV. STAT. 9:2800.51 *et seq.* [rec. doc. 8]. On August 3, 2012, Bertrand filed a Motion for Leave to File First Amending and Supplemental Complaint, seeking to delete the common law negligence claims pled in the original complaint. [rec. doc. 25].

On October 11, 2012, Eli Lilly filed the instant Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). [rec. doc. 31]. By this Motion, Eli Lilly seeks to dismiss Bertrand's First Amending and Supplemental Complaint on the grounds that it fails to allege enough facts to give defendant fair notice of the basis of the claims against it. Specifically, it argues that the amending complaint is "nothing more than a formalistic recitation of labels and conclusions, which are devoid of factual enhancement and which fail to allege essential elements of any claim" under the LPLA, in derogation of the pleading requirements set forth in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).[2]

In their First Amended Complaint, as a general matter, the plaintiffs allege Eli Lilly manufactured the antidepressant drug, Prozac, which Jeannine Bertrand was taking as prescribed at the time she became pregnant. The complaint further alleges when the child born of that pregnancy was approximately six to eight months old, the child was diagnosed with serious conditions, including spina bifida occulta, rib and kidney deformities, congenital scoliosis, tethered spinal cord, hip displasia, and thoracic insufficiency syndrome. Additionally, plaintiffs assert that since her diagnoses, the child has undergone the placement of vertical expandable prosthetic titanium ribs.

---

[2] *See* Report and Recommendation, Doc. 46, at pp. 1-2.

In their First Amended Complaint, plaintiffs allege the child's birth defects and related damages are "the direct and proximate result of breaches of obligations owed by defendants to plaintiffs, including defects in design, marketing, manufacture, distribution, instructions and warning by the defendants."[3] These alleged defects and breaches include:

- A. Failure to instruct and/or warn women attempting to conceive of the potential birth defects associated with Prozac;

- B. Manufacturing, producing, promoting, formulating, creating and/or designing Prozac without adequately testing it;

- C. Failing to provide adequate warning of the dangers associated with Prozac;

- D. The defects in designing, formulating, researching, developing, manufacturing, marketing, promoting and selling a medication when it knew or reasonably should have known of the propensity to cause birth defects;

- E. Its strict liability under the Louisiana Products Liability Act as a result of its design, development, manufacture, marketing and sale of a medication which is defective and unreasonably dangerous to women attempting to conceive and pregnant women;

- F. The continued production and sale of this medication given the propensity of this medication to cause birth defects;

- G. Providing inaccurate labeling and inadequate warnings and instructions; and

- H. Utilizing testing methods which are not accurate, sensitive, specific, and/or reproducible and/or such accuracy, sensitivity, specificity, and/or reproducibility of test methods have not been properly established and documented.[4]

For the purposes of the magistrate's judge's Report and this Court's ruling, the foregoing claims are grouped together as follows: (1) the non-failure-to-warn claims (¶¶9B, 9D, 9E, 9F, and 9H); (2) the failure-to-warn claims (¶¶9A, 9C, 9G); and (3) claims in ¶¶9(I) and 9(J).

---

[3] *See* First Amending and Supplemental Complaint, Doc. 30, at ¶9.

[4] *Id.*

II.   **Legal Analysis**

    A.    **Non-failure-to-warn claims (¶¶9B, 9D, 9E, 9F, and 9H)**

The non-failure-to-warn claims allege liability against Eli Lilly for the following:

B.    Manufacturing, producing, promoting, formulating, creating and/or designing Prozac without adequately testing it;

D.    The defects in designing, formulating, researching, developing, manufacturing, marketing, promoting and selling a medication when it knew or reasonably should have known of the propensity to cause birth defects;

E.    Its strict liability under the Louisiana Products Liability Act as a result of its design, development, manufacture, marketing and sale of a medication which is defective and unreasonably dangerous to women attempting to conceive and pregnant women;

F.    The continued production and sale of this medication given the propensity of this medication to cause birth defects; and

H.    Utilizing testing methods which are not accurate, sensitive, specific, and/or reproducible and/or such accuracy, sensitivity, specificity, and/or reproducibility of test methods have not been properly established and documented.

The magistrate judge concluded the plaintiffs pled sufficient facts from which to draw a reasonable inference that plaintiffs have sufficiently pled a plausible claim for relief under the LPLA.[5] Specifically, the magistrate judge found those claims of the plaintiffs which allege the

---

[5] A product is "unreasonably dangerous" under the LPLA if the product meets at least one of the following criteria: (1) the product is unreasonably dangerous in construction or composition; (2) the product is unreasonably dangerous in design; (3) the product is unreasonably dangerous because an adequate warning about the product has not been provided, or (4) the product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product. *Stahl*, 283 F.3d at 261 (*citing* LA. REV. STAT. §§ 9:2800.55-58).

To establish a construction or composition defect claim, under Louisiana law, a plaintiff must establish that, at the time the product left its manufacturer's control, the product "deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." LA. REV. STAT. § 9:2800.55.

A product is unreasonably dangerous in design if at the time the product left the manufacturer's control: (1) there existed an alternative design for the product that was capable of preventing the plaintiff's damage, and (2) the likelihood that the product's design would cause the plaintiff's damage and the gravity of that damage outweighed the

medication in question was defective and unreasonably dangerous to women attempting to conceive and pregnant women because it caused birth defects, were adequately pled in order to place Eli Lilly on notice of the nature of the claims against it for design defects under the LPLA.

In their Objection, Eli Lilly argues the non-failure-to-warn claims are essentially claims for construction/composition defects or design defects under the LPLA, and the plaintiffs fail to sufficiently plead such claims because they do not (1) allege a defect in the dosage design or assert that a lower dosage would have prevented Ms. Bertrand's injuries; or (2) allege the Prozac allegedly prescribed to Ms. Bertrand deviated from defendant's specifications or performance standards.

The magistrate judge addressed both of the foregoing arguments in his Report and concluded the evidence necessary to prove the non-failure to warn claims is likely highly technical and, at the 12(b)(6) stage of the litigation, likely within the sole knowledge of Eli Lilly. Concluding the standard set forth in *Twombly* "simply calls for enough facts to raise a reasonable expectation *that discovery will reveal evidence* of the necessary claims or elements," (emphasis added), the magistrate judge concluded the plaintiffs' allegations are sufficient to place Eli Lilly *on notice* of the claims against it for construction and/or design defects under the LPLA.

In support of his findings, the magistrate judge noted *Winslow v. W.L. Gore & Assoc., Inc.*, 2011 WL 866184 (W.D. La. Jan. 21, 2011) (Kirk, M.J.), in which Magistrate Judge Kirk, in a Report and Recommendation, found the plaintiff alleging a mesh medical device implanted during hernia surgery had deteriorated and thus caused damage or injury, adequately pled facts regarding her products liability claim. In *Winslow*, Magistrate Judge Kirk noted *Twombly* and *Iqbal* were not

---

burden on the manufacturer of adopting the alternative design and the adverse effect if any of the alternative design on the utility of the product. *Guidry v. Adventis Pharmaceuticals, Inc.*, 418 F.Supp.2d 835, 840 (M.D. La. 2006) (citing LA. REV. STAT. § 9:2800.56).

products liability suits, and in products liability lawsuits, almost all of the evidence is in the possession of the defendant, and, therefore, it is likely impossible for plaintiffs to state more specific allegations regarding defects in manufacture and design without first having the benefit of discovery and expert analysis. The district court adopted the magistrate judge's finding that the plaintiff's allegations were "plausible on [their] face" for 12(b)(6) purposes, but also permitted the plaintiff to amend her pleadings to "hone her petition" with respect to her allegations.[6]

The magistrate judge in the instant case also cited *Harris v. Merck & Co., Inc.*, 2012 WL 5384720 (W.D. La. Nov. 1, 2012) (Trimble, J.), in which the court concluded plaintiffs' allegations were sufficient *to apprise pharmaceutical defendant of the claims against it*, where the complaint alleged defects in dosage design and asserted a lower dose would have prevented plaintiff's injuries.[7]

Eli Lilly's attempts to distinguish *Winslow* and *Harris* are not persuasive in light of the United States Supreme Court's charge to the district court to use "common sense" in evaluating the sufficiency of the facts pled at this stage of the litigation.[8] With respect to these claims, the magistrate judge notes:

> The pleadings allege that Jeannine Bertrand, while trying to conceive and [sic] pregnant with Aimee, was prescribed Prozac, which she took as prescribed. Aimee was born with serious birth defects. These are all factual allegations, entitled to the presumption of truth at this stage of the case. The complaint then alleges that the birth defects were caused by Prozac, which [was] unreasonably dangerous for

---

[6] *See Winslow v. W.L. Gore & Assoc., Inc.*, 10-0116 (W.D. La. March 11, 2011) (Drell, J.).

[7] While this Court is not bound by the foregoing cases, as they are fellow district court opinions, this Court nevertheless finds these cases to be beneficial and enlightening to this Court's analysis.

[8] This Court has also considered Eli Lilly's argument that *Merck* is distinguishable because in the instant case, the plaintiffs have not alleged defects in dosage design and asserted a lower dose would have prevented plaintiff's injuries, whereas in *Merck*, the complaint contained such allegations. For the reasons stated by the magistrate judge, this Court concludes Eli Lilly has, nonetheless, been put on notice of the nature of the claims against it. It is anticipated that additional discovery will assist plaintiffs and defendants in the refinement of their claims and arguments.

pregnant women, or women seeking to conceive, to ingest.

The complaint alleges that Prozac was unreasonably dangerous in design and that the defendant failed to sufficiently test Prozac, or that the test results known to the defendant were not disclosed. These are factual allegations also entitled to the assumption of truth at this stage of the case.

After a *de novo* review of the magistrate judge's decision on this point, this Court concludes the magistrate judge's ruling is correct, and the plaintiffs have sufficiently pled their non-failure to warn claims at this stage of the litigation under the *Twombly* and *Iqbal* standards. This Court makes no determination as to whether plaintiffs will ultimately prevail, as that is not the question before this Court at this juncture.

**B.     Failure-to-warn claims (¶¶9A, 9C, 9G)**

The failure-to-warn claims allege liability against Eli Lilly for the following:

A.  Failure to instruct and/or warn women attempting to conceive of the potential birth defects associated with Prozac;

C.  Failing to provide adequate warning of the dangers associated with Prozac; and

G.  Providing inaccurate labeling and inadequate warnings and instructions.

Eli Lilly objects to the foregoing claims on the following grounds: (1) With respect to the claim asserted in ¶9A, Eli Lilly argues the claim must be dismissed as currently pled because, under Louisiana law, an allegation of liability for failure to warn may only be asserted against a *prescribing physician*, as opposed to consumers or patients; and (2) the allegations contained within ¶¶9C & G do not sufficiently allege claims for failure to warn, because they lack the essential allegation that, but for the inadequate warning, Bertrand's physicians would not have prescribed the medication in question.

Reviewing the foregoing allegations based on his "common sense" and a review of the facts

pled, the magistrate judge construed the allegation in ¶9A "to be allegations that inadequate warnings were provided to the *prescribing physicians* by the defendants, *which caused the prescribing physicians to prescribe Prozac to Jeanine Bertrand* because they were not warned, adequately, of the danger to women like Bertrand."[9] The magistrate judge noted in a footnote that "[a] contrary construction would not require dismissal, and would simply require the plaintiff to amend his complaint to specify that a warning was inadequate as to the learned intermediary. Under the circumstances of this case, that is a waste of time and expense since all parties understand and recognize the existence of the learned intermediary defense."[10]

Under Louisiana law and the "learned intermediary" doctrine, a drug manufacturer discharges its duty to consumers by reasonably informing prescribing physicians (rather than consumers or patients) of the dangers of harm from a drug. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 265 (5th Cir. 2002); *Jackson v. Johnson & Johnson*, 2012 WL 2428262 (W.D. La. June 25, 2012) (Hornsby, J.). As the magistrate judge noted in his Report, arguably the filings reflect the parties understand the learned intermediary doctrine applies in this case, and perhaps the possibility of the learned intermediary defense and suggest the argument that plaintiffs allege inadequate warnings were provided *to the prescribing physicians* by the defendants, *which caused the prescribing physicians to prescribe Prozac to Jeanine Bertrand* **because the prescribing physicians** were not warned, adequately, of the danger to women like plaintiff Bertrand. In their Objection, however, Eli Lilly argues ¶9A cannot stand as pled, but does not explicitly argue the interpretation given by the magistrate judge is error. Nevertheless, rather than read assumptions into the pleadings

---

[9] *See* Report and Recommendation, Doc. 46, at p. 17 (emphasis added).

[10] *Id.* at p. 17, n.3.

11

and in the interest of judicial economy and efficiency, this Court will allow the plaintiffs the opportunity to amend ¶9A of their First Amended Complaint at this juncture should they so desire. The amendment shall be limited to ¶9A only, and shall act only to clarify the possible ambiguity surrounding the learned intermediary defense addressed by the magistrate judge.[11]

The remaining aspects of Eli Lilly's Objection to plaintiffs' failure-to-warn claims – namely, that the information relevant to these claims is not in the sole possession of Eli Lilly and that the claims must fail because they do not allege a causal connection between the failure to warn and Bertrand's injuries – do not require dismissal of the claims at this juncture under this procedural vehicle. As the magistrate judge noted in his Ruling:

> Here, plaintiffs allege that their child was injured by Jeannine Bertrand's taking Prozac during pregnancy, that Eli Lilly failed to provide warnings of the propensity of this medication to case birth defects, and that Eli Lilly failed to instruct and/or warn women (presumably through their physicians) of attempting to conceive because of the potential birth defects associated with Prozac.
>
> These allegations notified Eli Lilly of the grounds on which the failure to warn claim is based. Further, there is a reasonable expectation that discovery will reveal evidence concerning the applicability of the learned intermediary doctrine, alternative product design, and other evidence of the necessary claims or elements. *See Nelson v. Mylan Pharmaceuticals, Inc.*, 2010 WL 3339274, *5 (W.D. La. Aug. 3, 2010) (Hanna, J.); *Brennon, supra*, at *5. Thus, I find that the allegations are sufficient to support a failure-to-warn claim at this stage of the litigation.[12]

This Court agrees with the magistrate judge. After a "common sense" evaluation of the failure to warn claims alleged by the plaintiffs, this Court agrees that the plaintiffs have alleged

---

[11] This Court agrees with the magistrate judge in his interpretation of what the plaintiffs *intended to* plead, however, there is some question as to whether the plaintiffs *adequately* did so. Nonetheless, were this Court to find the plaintiffs' pleading in ¶9A is inadequate and grant defendants' 12(b)(6) motion to dismiss, the Federal Rules of Civil Procedure would dictate the plaintiffs should be permitted to amend their pleadings at this stage of the litigation if a proper motion was filed requesting amendment, hence, giving the plaintiffs an opportunity to do so at this juncture promotes judicial economy.

[12] *See* Doc. 46, at pp. 20-21.

sufficient facts to put defendants on notice of the nature of the failure-to-warn claims, with, perhaps, the exception of ¶9A, which the Court grants the plaintiffs 10 days to amend, should they desire. After amendment, if any, defendants shall retain their right to raise 12(b)(6) objections to the amended paragraph within the confines of this Court's scheduling order.

### C.  Claims in ¶¶ 9(I) and 9(J)

Additionally, the plaintiffs asserted claims for "[o]ther breaches and defects which may be shown through discovery or at trial; and "[g]enerally, the failure of these defendants to act with the required degree of care commensurate with the existing situation." *See* ¶¶ 9(I) and 9(J) of the Amending Complaint. However, the magistrate judge dismissed these claims on grounds the claims do not meet the pleading standards of *Iqbal* and *Twombly*. No party objects to this portion of the magistrate judge's recommendation, therefore this portion of the Report is adopted by this Court, and the claims contained in ¶¶ 9(I) and 9(J) of the First Amended Complaint are DISMISSED.

### IV.  Conclusion

Considering the foregoing,

IT IS ORDERED that, after this Court's *de novo* review of Eli Lilly's objections, this Court largely ADOPTS the findings of the magistrate judge, with some minor clarifications. Specifically, all aspects of the magistrate judge's Report are adopted, except for the magistrate judge's finding that plaintiff's claims contained within ¶9A of the First Amended Complaint [Doc. 30] are, on their face, sufficient. For the reasons stated in this Memorandum Ruling, it is ORDERED that the plaintiffs are GRANTED the opportunity to amend ¶9A within ten days of the date of this Ruling and Order, if desired, to reflect the argued "learned intermediary" doctrine, or risk dismissal of those claims couched under ¶9A.

In light of the foregoing, the Motion to Dismiss Pursuant to Federal Rule of Civil procedure 12(b)(6)" [Doc. 31] is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED with respect to Eli Lilly's motion to dismiss the claims contained within ¶¶9(I) and 9(J) of the First Amended Complaint, and these claims are DISMISSED as lacking sufficient factual information to state a claim. The motion is DENIED with respect to Eli Lilly's motion to dismiss plaintiffs' non-failure-to-warn claims (¶¶9B, 9D, 9E, 9F, and 9H) and failure-to-warn claims (¶¶9C and 9G), this Court agreeing with the magistrate judge that the foregoing claims allege sufficient facts to put the defendants on notice of the nature of the claims at this stage of the litigation. The motion to dismiss is also DENIED with respect to ¶9A, however, as explained above, the plaintiffs are GRANTED the opportunity to amend ¶9A within ten days of the date of this Ruling and Order, if desired, to reflect the argued "learned intermediary" doctrine, or risk dismissal of those claims couched under ¶9A.

THUS DONE AND SIGNED in Chambers, ~~Lafayette,~~ Louisiana, this ___13___ day of August, 2013.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE